IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AMANDA WILSON,

Plaintiff,

v.  No. 16-0936-DRH

CITY OF MT. VERNON and
MT. VERNON POLICE OFFICER
T. CHAPMAN, STAR 228,

Defendants.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Pending before the Court is defendants' motion for summary judgment (Doc. 24). Plaintiff opposes the motion (Doc. 25). Based on the record and the applicable law, the Court denies the motion for summary judgment.

On August 23, 2016, Amanda Wilson filed a two count complaint against the City of Mt. Vernon and Mt. Vernon Police Officer T. Chapman, Star 228, for excessive force in violation of 42 U.S.C. § 1983 (Count I) and for indemnification pursuant to 745 ILCS 10/9-102 (Count II) (Doc. 1). The complaint alleges that on January 9, 2016, Officer Chapman exercised excessive force when he arrested Wilson for disorderly conduct. Specifically, Wilson alleges that "Chapman intentionally pulled her arms behind her back to handcuff her knowing that she had an injured shoulder, which caused Plaintiff extreme pain and suffering." (Doc.

1, p. 3, ¶ 30). Defendants filed their answer to the complaint on September 16, 2016 (Doc. 11).

On July 24, 2017, defendants filed their motion for summary judgment (Doc. 24). Defendants argue that they are entitled to summary judgment as Officer Chapman's actions were more than reasonable and that the facts are clear that when Wilson advised Chapman that she could not place her arms behind her back as a result of a recent shoulder surgery, her arms were placed immediately in front of her and she was handcuffed in that position. Defendants also argue that both Chapman and the City of Mt. Vernon are entitled to qualified immunity as Chapman's conduct was not willful and wanton. Wilson counters that defendants are not entitled to summary judgment as this case is a "classic example of competing narratives which are inappropriate to resolve through summary judgment." (Doc. 25, p. 1). Specifically, Wilson contends that Officer Chapman was aware of her shoulder injury prior to him jerking her arm behind her back and handcuffing her.

## Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted). "A factual dispute is 'genuine' only if a reasonable jury could find for either party."

*Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Because the plaintiff bears the ultimate burden of persuasion, the defendant's summary judgment burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). The nonmovant must "go beyond the pleadings … to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Id.* at 1168–69 (internal quotation marks and citation omitted). Summary judgment is appropriate where "no reasonable jury could rule in favor of the nonmoving party." See *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted).

## Facts[1]

On December 4, 2015, Wilson had surgery on her shoulder. On December 29, 2016, Wilson had her sling removed from her arm.

On January 9, 2016, Officer Travis Chapman received a call regarding a disturbance on Opdyke Street in Mt. Vernon, Illinois. After receiving the call,

---

1 These undisputed facts are taken from the parties' briefs.

Officer Chapman responded to 301 Opdyke in Mt. Vernon. Upon arriving at that address, Officer Chapman spoke with complaining witness, Angela Smith. Smith advised Officer Chapman that Wilson previously was at Smith's house, banged on the door, and made threats to beat Smith's ass. Smith also said that Wilson pulled down her pants and exposed herself to Smith and the children inside the house. Smith told Officer Chapman that she was disturbed and alarmed by Wilson's conduct and that she wanted to pursue charges against Wilson.

In response to Smith's complaints, Officer Chapman looked up Wilson's address and proceeded to 312 Castleton Street. Upon arriving at 312 Castleton Street, Officer Chapman knocked on the door. A female answered the door and Officer Chapman asked for Wilson. During this time, Officer Jared Purcell arrived at 312 Castleton Street. Both police officers waited for Wilson to arrive at that address. When Wilson arrived, she observed both police officers. Officer Chapman observed Wilson approaching the Castleton residence.

Subsequently, Officer Chapman explained to Wilson why the police officers were at her house and allowed Wilson to tell her side of the story. Wilson admitted that she was at Smith's house, admitted that she said to Smith "Bitch, kiss my ass" and admitted that she tried to moon the persons there.

Based on his conversation with Smith and a voicemail that Wilson left Smith regarding how upset Wilson was and how she was "going down" there to raise hell, Officer Chapman decided to arrest Wilson and placed her under arrest for disorderly conduct. The officers advised Wilson that she was under arrest. Each

officer grabbed one of Wilson's arms; Officer Purcell grabbed Wilson's right arm. Eventually, Wilson was handcuffed with her arms in front of her. Wilson never requested emergency service for her shoulder. The police officers took Wilson to the Jefferson County Jail. Wilson had a second surgery on her arm.

## Analysis

Allegations that police officers used excessive force are analyzed under the Fourth Amendment's standard of "objective reasonableness." *See Graham v. Connor,* 490 U.S. 386, 396-97 (1989). Although an arresting officer has the right to use some force in effectuating an arrest and "handcuffing will be the reasonable course in many, if not most arrest situations," there is no *per se* rule that the use of handcuffs is always reasonable. *Soares v. Conn.*, 8 F.3d 917, 922 (2nd Cir. 1993). The Seventh Circuit has made it clear that under the Fourth Amendment, "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014)(citing *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009)).

Of course, as is the case with any excessive force claim, whether or not an officer's use of handcuffs is unreasonable depends on the particular circumstances of the arrest. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003)("A police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonable necessary to make the arrest.'"). In some case, the officer's actions, by themselves, will reveal

their unreasonableness. *Id.* at 779 (concluding that it was not objectively reasonable for the officer to twist the plaintiff's arms, for them behind her back and over-tighten her handcuffs to the point of causing numbness and significant injury, when the plaintiff had not threatened harm to anyone, was not resisting arrest, and was charged with a minor offense). In other situations, however, "it may become clear that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual placed under arrest." *Stainback*, 569 F.3d at 773. The most common example of this type of unreasonable conduct is where an officer knows that an arrestee is injured or otherwise disabled and presents no threat of harm or flight, yet the officer ignores the injury or disability and effectuates the arrest without accommodation for the arrestee's impairments. More precisely, a body of law has developed holding that if an officer knows of a preexisiting injury or medical condition that will be aggravated by handcuffing an arrestee behind his back, the officer is "obligated to consider that information, together with the other relevant circumstances, in determining whether it [is] appropriate to handcuff [the arrestee in such a fashion]." *Stainback*, 569 F.3d at 773. If the officer fails to consider the injury or condition and handcuffs that arrestee behind his back regardless of his impairment, the clearly established law provides that the officer has acted unreasonably. *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993) ((denying qualified immunity to an officer who arrested the plaintiff for a suspended license and handcuffed her behind

her back although she told him that she was returning from a doctor's appointment for a sore shoulder and requested that she not be handcuffed behind her back).

Clearly, there are genuine issues of material fact in dispute. Officer Chapman's version of the story is that Wilson did not advise him of her injury nor did Wilson advise him that her arm could not be bent behind her back. Officer Chapman also contends that once Wilson complained of her injury, he quickly handcuffed her in the front. Both Chapman and Purcell testified that Wilson's arms were never placed behind her back. On the other hand, Wilson's recollection is that she informed Chapman of her shoulder surgery and the fact that her arms could not go behind her back prior to Chapman's actions. Wilson claims that while telling the police officers her version of events, she explained that she was unable to pull her pants down because she had just had shoulder surgery. In addition, Wilson's daughter, Samantha Wilson, who was present during the incident with the police officers, recalls that her mom's hands were handcuffed behind her back, that her mom was yelling in pain and that Chapman was aware of her injury prior to handcuffing her mom's hands behind her back. Thus, there are questions of material fact surrounding the manner in which Chapman handcuffed Wilson and whether his actions were unreasonable under the totality of the circumstances and whether his actions constitute excessive force.

Moreover, because it was clearly established at the time of Wilson's arrest that when an officer is made aware that an arrestee who poses no risks of flight or safety suffers from a preexisting shoulder injury, the officer must fully consider the

injury and surrounding circumstances in deciding whether it is appropriate to handcuff that arrestee behind the back or whether such restraint would inflict unnecessary pain, Chapman and the City of Mt. Vernon are not entitled to qualified immunity on the claim that Chapman used excessive force by handcuffing her behind her back. Thus, defendants are not entitled to summary judgment.

## Conclusion

Accordingly, the Court **DENIES** defendants' motion for summary judgment (Doc. 24). The Court **SETS** this matter for Final Pretrial Conference on November 30, 2017 at 11:00 a.m. Further, the Court **DIRECTS** the parties to contact Magistrate Judge Reona J. Daly's chambers if a settlement conference would be beneficial.

**IT IS SO ORDERED.**

Digitally signed by Judge David R. Herndon
Date: 2017.10.10 12:23:34 -05'00'

**United States District Judge**